IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JONATHAN WARREN, <br><br> Plaintiff, <br><br> v. <br><br> DAVID STEINER, Postmaster General of the United States Postal Service, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br><br> Case No. 1:24-cv-00129-JNP-DBP <br><br> Chief District Judge Jill N. Parrish |

Plaintiff Jonathan Warren is suing David Steiner in his official capacity as the Postmaster General of the United State Postal Service ("USPS"). Plaintiff alleges that USPS discriminated and retaliated against him based on his disability status. On November 21, 2025, Defendant Steiner moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. *See* ECF No. 32. Plaintiff opposes the motion. *See* ECF No. 37. For the following reasons, the court GRANTS the motion.

## BACKGROUND[1]

Plaintiff worked as a probationary City Carrier Assistant for the United States Postal Service. ECF No. 33-1 ¶ 3. A City Carrier Assistant is a gap-filler position, filling in for career letter carriers as needed by delivering and collecting mail either on foot or by vehicle in their assigned areas. *Id.* ¶ 6; ECF No. 37 at 5. As part of a union, a City Carrier Assistant's hourly rates,

---

[1] The court recites the facts of the case by resolving all disputes of fact in favor of Plaintiff, the non-moving party.

benefits, and work rules are governed by the National Letter Carrier's Association Union contract. ECF No. 33-1 ¶ 8.

As they are deemed "flexible" employees, City Carrier Assistant schedules often change from day to day based on the needs of the Postal Service. *Id.* ¶ 7. For example, though City Carrier Assistants are assigned to specific post offices, they routinely must work at other post offices within their district as needs dictate. *Id.* ¶ 11. This scheduling is handled telephonically each morning for the Salt Lake District, the district in which Plaintiff worked. *Id.* ¶ 12. Plaintiff, for example, was assigned to the Cottonwood Heights Post Office but had been assigned to work at other post offices on nine occasions prior to the time period relevant to these claims. ECF No. 33-1 ¶ 3–4; ECF No. 33-6 ¶ 17; ECF No. 37 at 15. Other City Carrier Assistants assigned to the same post office had also been assigned to work at other post offices while Plaintiff was employed. ECF No. 33-6 ¶ 17; ECF No. 37 at 16.

Plaintiff started as a probationary City Carrier Assistant on July 1, 2023. ECF No. 33-1 ¶ 3–4. All City Carrier Assistants are hired on a probationary basis for their first three months. *Id.* ¶ 13. During this time period, City Carrier Assistants are not entitled to sick leave or annual leave. *Id.* ¶ 14.

On August 23, 2023, around two months into his three-month probationary period, Plaintiff gave his supervisor, Aaron Justesen, a note from a clinical psychologist at the U.S. Department of Veterans Affair ("VA"). ECF No. 33-6 ¶ 7 (Justesen affidavit); ECF No. 33-7 (VA letter). The note, dated August 22, states:

> Mr. Warren has recently experienced increased anxiety and panic attack symptoms in the context of a high level of work hours. In my professional opinion, Mr. Warren would benefit from working no more than 8 hours per day.

ECF No. 33-7. Justesen agreed that moving forward the post office would do its best to limit

Plaintiff's shift to eight hours a day. ECF No 33-6 ¶ 9; ECF No. 37 at 9. Neither Justesen nor Plaintiff's manager, Michael Cress, was aware of Plaintiff's medical diagnoses or disabilities before Plaintiff provided the note.[2] ECF No. 33-6 ¶ 6; ECF No. 37 at 12. Plaintiff had withheld any mention of his generalized anxiety disorder or post-traumatic stress disorder in his employment application, as he was entitled to do. ECF No. 33-1 ¶ 18; *see* ECF No. 2 ¶ 13.

In fact, Plaintiff was not the only carrier within the Cottonwood Heights Post Office with a work-hour restriction. ECF No. 37 at 9–10. There were consequently established policies in place for employees with such restrictions. For example, if an hours-restricted employee is not able to finish her route within her scheduled shift, the employee returns any undelivered mail to the post office and notifies her supervisor. *Id.*

That is what happened the day Plaintiff provided Justesen with the doctor's note. After working "slightly more than eight hours," Plaintiff returned to the post office and returned some undelivered mail. *Id.* Plaintiff had not been told to work more than eight hours that day. *Id.* (Plaintiff stating that Justesen told him to "get as much as he could get done in eight hours").

Moving forward, Justesen also adjusted Plaintiff's start time to nine in the morning. ECF No. 37 at 13–14. Prior to this change, Plaintiff's start time on any given day could range from 7:30 a.m. to 8 p.m., depending on the office's needs. *Id.* It is undisputed that the greatest need at the office was for delivery help, and a 9 a.m. start time would allow Plaintiff to maximize the time he would be able to deliver mail within those eight hours. ECF No. 33-6 ¶ 10; ECF No. 37 at 13–14.

---

[2] Plaintiff does not appear to dispute that neither Justesen nor Cress knew of his medical diagnoses or disabilities before the note was provided. *See* ECF No. 37 at 12. He asserts only that he told USPS training officials (though not the Cottonwood Heights Post Office employees) that he would need to attend medical appointments every now and then for treatment. *Id.*

The next day, August 24, the Downtown Post Office needed additional assistance. ECF No. 33-6 ¶ 14 (Justesen affidavit); ECF No. 33-8 ¶ 3 (Cress affidavit); ECF No. 37 at 14–15. Scott Smith, the Manager of Customer Service Operations, instructed Michael Cress, Justesen's supervisor, to assign a City Carrier Assistant to assist the Downtown Post Office. ECF No. 33-8 ¶ 2–3 (Cress affidavit); ECF No. 37 at 14–15. Cress then relayed that request to Justesen, who texted Plaintiff at 8:10 a.m.: "Downtown needs your assistance today. Please be there at 9:00 a.m." *Id.* Plaintiff worked from the Downtown Post Office for 7.66 hours that day. ECF No. 33-1 ¶ 17; ECF No. 37 at 15.

On August 25, 2023, the Downtown Post Office again needed assistance. ECF No. 33-6 ¶ 16 (Justesen affidavit); ECF No. 33-8 ¶ 4 (Cress affidavit); ECF No. 37 at 17. Justesen texted Plaintiff at 7:38 a.m., stating, "Downtown will need help again today. 9.00 a.m. Thank you." ECF No. 37 at 17. Plaintiff, however, did not report to the Downtown Post Office that morning. ECF No. 33-1 ¶ 19; ECF No. 37 at 17.

Instead, at 9:26 a.m., Plaintiff called Cress. ECF No. 33-8 ¶ 5; ECF No. 37 at 19. In that call, he complained about the Downtown assignment and about Justesen and asked Cress for contact information for Human Resources ("HR"). ECF No. 33-8 ¶ 7; ECF No. 37 at 19. He also asked to take a sick day. Cress did not respond to the sick day request. ECF No. 37 at 19. Cress replied that he would provide Plaintiff with the HR contact information but that Plaintiff would still need to report to the Downtown Post Office. ECF No. 33-8 ¶¶ 6–7; ECF No. 37 at 20. On a later call that day, at 12:23 p.m., Cress explained that if Plaintiff did not report to work, Plaintiff would be removed from his probationary employment. ECF No. 33-8 ¶ 6; ECF No. 37 at 20. According to Plaintiff's description of that call, Plaintiff responded by repeatedly requesting the HR information. ECF No. 37 at 20. Cress again responded that he would send it later and that he

wanted an answer on whether Plaintiff planned to show up to work that day. *Id.* After a back and forth, Plaintiff alleges that Cress ended the call by stating, "Okay. You are refusing to answer my question, so you don't have a job anymore." *Id.*

After the call, Cress texted Plaintiff the HR contact information. ECF No. 33-8 ¶ 7; ECF No. 37 at 21. Plaintiff did not report to the Downtown Post Office after that call. ECF No. 33-8 ¶ 8; ECF No. 37 at 21. He also did not contact HR. ECF No. 33-1 ¶ 20; ECF No. 37 at 21.

On August 26, 2023, Plaintiff received a memorandum of removal in the mail dated August 25, 2023, and signed by Michael Cress. ECF No. 33-2 (removal letter). It stated that his employment was terminated for "failure to meet the expectations of a Letter Carrier." *Id.*; *see* ECF No. 33-1 ¶ 5 (USPS HR manager stating Plaintiff was removed "for failure to meet expectations of a letter carrier").

After his termination, Plaintiff filed a formal USPS Equal Employment Opportunity ("EEO") complaint, charging that the following conduct were acts of discrimination or retaliation: (1) the shift to a 9 a.m. start time; (2) Plaintiff working more than eight hours on August 23; (3) the orders to Plaintiff to work from the Downtown Post Office on August 24 and 25; and (4) his termination on August 25. ECF No. 37-3 at 2 (USPS EEO Acceptance for Investigation); ECF No. 37 at 22–23. After an investigation, an administrative law judge issued a Final Agency Decision determining that no discrimination or retaliation occurred with regard to these incidents. ECF No. 37 at 22–23. Plaintiff was then issued a Notice of Right to File a Civil Action. *Id.*

## LEGAL STANDARD

The court must grant summary judgment on a claim or part of a claim when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court must always view the facts "in the light

most favorable to the non-moving party[,] draw[ing] all reasonable inferences in [its] favor." *Osborne v. Baxter Healthcare Corp.*, 798 F.3d 1260, 1266 (10th Cir. 2015).

Initially, "[t]he movant has the burden of showing that there is no genuine issue of fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the movant has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Id*. at 248. If the movant does not bear the burden of persuasion at trial, it may satisfy its burden "simply by pointing out . . . a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Then, the nonmovant must "'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.*

If an employee relies on circumstantial evidence to prove an employment discrimination claim, courts apply the *McDonnell Douglas* burden-shifting framework when evaluating a motion for summary judgment. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). This three-step analytical framework first demands that the employee carry his or her initial burden of establishing a prima facie case of discrimination. *Id.* at 802. If the employee satisfies this step, the burden then shifts to the employer to "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action taken by the employer. *Id.* Finally, the burden shifts back to the employee to show that that the employer's stated reason for the adverse employment action was pretextual. *Id.* at 804.

## ANALYSIS

Plaintiff brings two claims.[3] First, he alleges that he was discriminated against based on his disability status under Title VII of the Civil Rights Act of 1964 and the Rehabilitation Act of 1973. *See* ECF No. 2 ¶¶ 42–54. Second, he claims he faced retaliation after he engaged in protected activity by complaining of actions that he alleges violated non-discrimination laws. *See* ECF No. 2 ¶¶ 55–71. Plaintiff concedes that "his discrimination and retaliation claims rise [and] fall on the question of whether the USPS'[s] adverse action of terminating his employment was discriminatory and/or retaliatory."[4] ECF No. 36 at 26.

## I.    DISCRIMINATION

Plaintiff alleges that USPS discriminated against him based on disability status under Title VII of the Civil Rights Act of 1964 and the Rehabilitation Act of 1973. Because he relies on circumstantial evidence to prove his discrimination claim, it is subject to the *McDonnell Douglas*

---

[3] The court does not read Plaintiff's complaint as raising a separate failure-to-accommodate claim. Instead, Plaintiff raises the alleged failures to accommodate as adverse actions relevant to his discrimination claim. ECF No. 2 ¶ 48.

[4] Irrespective of this concession, the court finds that the other alleged relevant actions—his change in start time, his working slightly more than eight hours one day, and his two-day assignment to the Downtown Post Office—do not qualify as adverse actions for either the discrimination or retaliation claims. With respect to his discrimination claim, Plaintiff has not demonstrated that these actions led him to experience "some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024); *see Scheer v. Sisters of Charity of Leavenworth Health Sys., Inc.*, 144 F.4th 1212, 1215 n.2, 1216 n.3 (10th Cir. 2025) (applying the standard set forth in *Muldrow* to Title VII and Rehabilitation Act claims). These actions did not leave Plaintiff worse off. *See Muldrow*, 601 U.S. at 359. Rather, they were either innocuous, his own choice, or part of the job, respectively. *See, e.g.*, ECF No. 32-6 ¶ 11 (Justesen affidavit noting a change in start time would not negatively affect Plaintiff since he already learned how to case mail); ECF No. 37 at 13–14 (not disputing that start times could vary depending on office needs). With respect to the retaliation claim, these actions were not "materially adverse" for the same reasons. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

burden-shifting framework on summary judgment. *See, e.g.*, *Ford v. Brennan*, No. 21-4086, 2023 WL 5606233, at *4 n.7 (10th Cir. Aug. 30, 2023) (unpublished) (applying *McDonnel Douglas* to Rehabilitation Act claims); *Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019) (applying *McDonnel Douglas* to Title VII claims). Defendant argues that he is entitled to summary judgment because Plaintiff cannot satisfy either step one or step three of *McDonnell Douglas*. *See* ECF No. 32 at 3. Because the court concludes that Plaintiff has not met his burden to show pretext under step three, the court need not analyze whether he has established a prima facie case under step one.

Plaintiff concedes that Defendant has articulated a legitimate, nondiscriminatory reason for his termination: his failure to report to work. ECF No. 37 at 29; ECF No. 32 at 19. In order to avoid summary judgment, Plaintiff must therefore show that Defendant's stated reason for the termination was pretextual. "A plaintiff may show pretext by demonstrating the 'proffered reason is factually false,' or that 'discrimination was a primary factor in the employer's decision.'" *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017) (citations omitted). "This is often accomplished 'by revealing weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered reason, such that a reasonable fact finder could deem the employer's reason unworthy of credence.'" *Id.* (citation omitted).

Plaintiff has not met his burden here. He has shown no "genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief." *Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019) (citation omitted). He argues there is "evidence of temporal proximity and animus" and asserts he was not being insubordinate

when he did not report to work.[5] ECF No. 37 at 26, 30. But in support he only relies on his own affidavit in which he stated why he believed he was fired. ECF No. 37 at 30–32.

While genuine disputes of fact must be resolved in Plaintiff's favor, "evidence . . . must be based on more than mere speculation, conjecture, or surmise" to defeat a motion for summary judgment. *Ford v. Brennan*, No. 21-4086, 2023 WL 5606233, at *3 (10th Cir. Aug. 30, 2023) (unpublished) (quoting *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004)); *GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1200 (10th Cir. 2022) ("[W]hile we draw all reasonable inferences in favor of the non-moving party, 'an inference is unreasonable if it requires a degree of speculation and conjecture that renders [the factfinder's] findings a guess or mere possibility.' In this vein, 'statements of mere belief . . . must be disregarded' at the summary judgment stage." (cleaned up and internal citations removed)).

Plaintiff's belief alone does not change the undisputed fact that he did not show up to work. Nor does it change the undisputed fact that he was told if he did not show up for work, he would be fired. While he points out that he asked for a sick day on the first phone call, Counsel for Plaintiff also conceded during oral argument that Plaintiff did not frame the request as an accommodation based on his disability status. Ultimately, the circumstantial evidence Plaintiff points to—which essentially boils down to temporal proximity—is insufficient for the court to draw any reasonable inference of pretext, especially considering the intervening event of Plaintiff not reporting to duty. *Plump v. Gov't Emps. Ins. Co.*, 161 F.4th 1222, 1236 (10th Cir. 2025) (stating

---

[5] Plaintiff's complaint briefly alleges that other similarly situated employees were treated more favorably than him. ECF No. 2 ¶ 52. Plaintiff does not raise a disparate treatment argument in his briefing, however, and the undisputed facts do not support that other employees were treated differently. *See* ECF No. 33-6 ¶ 17; ECF No. 37 at 16.

"in analyzing pretext, temporal proximity alone is insufficient to raise a genuine issue of material fact concerning pretext" (quoting *DePaula*, 859 F.3d at 976)).

The court, therefore, grants summary judgment on this claim.

## II.   RETALIATION

Plaintiff's retaliation claim is subject to the same three-step *McDonnell Douglas* framework. *Wise v. DeJoy*, 71 F.4th 744, 751 (10th Cir. 2023) (applying the framework to a retaliation claim under the Rehabilitation Act); *Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019) (applying the framework to Title VII retaliation claims). The court's analysis of pretext for the discrimination claim is equally applicable to the retaliation claim. The record does not support a reasonable finding of pretext, and the court therefore grants summary judgment on this claim.

## CONCLUSION AND ORDER

For the above stated reasons, the court hereby orders Defendant's motion for summary judgment is **GRANTED**. ECF No. 32.

Signed August 4, 2026.

BY THE COURT

Jill N. Parrish
United States Chief District Judge